UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                 :

OLUSEYI ADENIJI,                   :
                                 :

                   Plaintiff,    :
                                 :            19-CV-8032 (VSB)
          - against -        :
                                 :         **OPINION & ORDER**
                                 :

THE HARMAN FIRM, LLP, THE CITY OF :
NEW YORK,                   :
                                 :

                  Defendants.  :
                                 :
--------------------------------------------------------X

<u>Appearances</u>:

Oluseyi Adeniji
*Pro se Plaintiff*

Donald C. Sullivan
New York, New York
*Counsel for Defendant City of New York*

Edgar M. Rivera
The Harman Firm, LLP
New York, New York
*Counsel for Defendant The Harman Firm, LLP*

<u>VERNON S. BRODERICK</u>, United States District Judge:

       Before me is the motion filed by Defendant City of New York (the "City") to dismiss the

second amended complaint, (Doc. 16), and the motion filed by Defendant The Harman Firm,

LLP ("The Harman Firm") to compel arbitration or, in the alternative, to dismiss the second

amended complaint, (Doc. 12). For reasons stated below, the City's motion to dismiss Plaintiff's

racial discrimination claim under Title VII of the Civil Rights Act of 1964 is DENIED; the

City's motion to dismiss Plaintiff's sex discrimination claim and claim under 42 U.S.C. § 1981 is

GRANTED; The Harman Firm's motion to dismiss Plaintiff's purported malpractice claim is GRANTED; and The Harman Firm's motion to compel arbitration is DENIED as moot.

## I.   __Factual Background__[1]

Plaintiff Oluseyi Adeniji is an African American originally from Nigeria.  (CCHR Compl.[2] ¶ 5.)  From August 4, 2014 to July 24, 2015, Plaintiff held the position of tax auditor for the New York City Department of Finance ("DoF").  (*Id.* ¶¶ 6, 39.)  This case arises from DoF's alleged discriminatory treatment of Plaintiff during his employment, and The Harman Firm's subsequent representation of Plaintiff in the administrative proceedings against DoF.

### A.  *Plaintiff's Employment at DoF*

Plaintiff was hired by DoF on August 4, 2014.  (*Id.* ¶ 6.)  During the training period, Plaintiff immediately noticed that his supervisor and co-workers treated him "less favorably than others," and he did not feel that "the training he received was adequate."  (*Id.* ¶ 7.)  Plaintiff later

---

[1] The facts contained in this section are largely based upon the factual allegations set forth in Plaintiff's second amended complaint, (Doc. 26 ("Second Amended Complaint" or "SAC")), and all documents referenced in and/or integral to it.  *See infra* n.2.  I assume the allegations therein to be true in considering the motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.  Allegations or assertions from other documents are also cited to provide factual background, and I will consider some of these allegations or assertions in determining The Harman Firm's motion under Rule 12(b)(1).  *See Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) ("[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." (citation omitted)).  However, I do not rely on such allegations or assertions in ruling on the City's Rule 12(b)(6) motion.

[2] "CCHR Compl." refers to Plaintiff's complaint filed in front of the City of New York Commission on Human Rights dated March 23, 2016, which was submitted in this case with the declaration of Edgar M. Rivera in support of The Harman Firm's motion to dismiss.  (*See* Doc. 13 ("Rivera Decl."), Ex. B ("CCHR Complaint").)  Plaintiff attached the letter to Rivera at The Harman Firm and the Notice of Administrative Closure to Plaintiff's initial complaint.  (Doc. 2, at 10–15.)  I consider the letter to Rivera, the Notice of Administrative Closure, and the CCHR Complaint as included in the second amended complaint because they are either referenced in and/or integral to the second amended complaint.  *See Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018) ("A complaint is . . . deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." (citation omitted)).  The pages referenced in Doc. 2 are the page numbers assigned to that document by the Court's electronic filing system.

complained to DoF's director, Kin Chan, about the inadequate training, but did not receive any

further training.  (*Id*. ¶ 8.)

Plaintiff's direct supervisor at DoF was Estella Dong.  (*Id*. ¶ 10.)  Plaintiff's workstation

was adjacent to the workstation of "the supervisor of bankruptcy," known to him as "Cathy."

(*Id*. ¶ 12.)  In and around the fall of 2014, Plaintiff overheard Cathy telling Dong that she was

suspicious of Plaintiff, and that Dong should "check on him."  (*Id*. ¶ 14.)  Dong immediately

went near Plaintiff's workstation to look at his computer, but Plaintiff was only doing work-

related research.  (*Id*. ¶15.)  Plaintiff felt "offended and embarrassed," and told Cathy that he

"felt uncomfortable with her telling others to spy on him."  (*Id*. ¶ 16.)  Cathy "hostilely

responded that as a supervisor, she had the authority to do so and that she already complained to

Mr. Chan."  (*Id*.)  Cathy, however, was not Plaintiff's supervisor.  (*Id*. ¶ 17.)

In November 2014, Plaintiff "earned praise in his first evaluation for good performance"

from Dong.  (*Id*. ¶ 10.)  Around the same time, Plaintiff had a meeting with Chan to discuss the

incident with Cathy.  (*Id*. ¶ 18.)  DoF, however, took no steps to resolve the situation related to

Cathy.  (*Id*. ¶ 19.)  After the meeting with Chan, Plaintiff "was severely harassed by Ms. Dong."

(*Id*. ¶ 20.)  On several occasions, Dong became upset when other co-workers spoke to Plaintiff.

(*Id*. ¶ 21.)  She also "arbitrarily criticiz[ed] his work," and "complained to Mr. Chan of

[Plaintiff's] purported lack of performance," but "refused to meet with [Plaintiff]" when Plaintiff

tried to seek guidance from her in order to "improve his performance to [her] standards."  (*Id*. ¶¶

25, 30).  According to Plaintiff's co-workers, Dong told them that she "did not like speaking to

him," (*id*. ¶ 26), and that they should not to speak to him, (*id*. ¶ 21).  Later, Plaintiff interviewed

for a higher-level tax auditor position within DoF, for which he was "qualified . . . and believed

the interview went well." (*Id*. ¶ 22.)  However, Plaintiff was not offered the position after Dong found out about the interview.  (*Id*. ¶ 23.)

At the time, the department primarily consisted of Asian Americans and Plaintiff was the only African American male in his department.  (*Id*. ¶ 27.)  Chan, Dong, and Cathy are all of Asian American ancestry.  (*Id*. ¶¶ 9, 11, 13.)  The higher-level tax auditor position that Plaintiff interviewed for was given to an Asian American employee.  (*Id*. ¶ 24.)  Dong was critical of Plaintiff's work, but she "treated the female Asian-American employees favorably, offering assistance and leniency with mistakes." (*Id*. ¶ 29.)  Moreover, Dong "circumvented her direct supervisor and DoF's assistant director," Akeem Ayinde, who is Nigerian American, by complaining directly to Chan.  (*Id*. ¶ 31.)  Plaintiff complained about Dong's "harassment" to Ayinde, who promised to relocate him away from Dong.  (*Id*. ¶32.)  However, Plaintiff was never relocated, nor was any investigation conducted into this matter.  (*Id*.)

In and around January 2015, Plaintiff applied to another position within DoF for which he was qualified.  (*Id*. ¶ 33.)  However, Dong continued to "harass Plaintiff" and "ma[de] him feel as though he was not fit for any position at DoF." (*Id*.)  Around the same time, Plaintiff met with Dong for his second performance evaluation.  (*Id*. ¶ 34.)  In this meeting, Dong told Plaintiff that he was "inferior," "African-Americans are lazy," and that as a result, he "would not progress at DoF." (*Id*. ¶ 35.)  Plaintiff found these remarks "extremely offensive and discouraging." (*Id*.)  Subsequently, in and around March 2015, Plaintiff received a less favorable evaluation.  (*Id*. ¶ 36.)

On or about April 9, 2015, "Dong gave Plaintiff a performance improvement plan." (*Id*. ¶ 37.)  In and around July 2015, Dong gave Plaintiff a poor evaluation.  (*Id*. ¶ 38.)  "[F]rustrated

by Ms. Dong's mistreatment," Plaintiff refused to sign the evaluation.  (*Id.*)  On or about July 24,

2015, DoF terminated Plaintiff's employment.  (*Id.* ¶ 39.)

After the decision to terminate Plaintiff's employment was made, Chan approached

Plaintiff's workstation, "accompanied by security guards to escort [Plaintiff] out of the building."

(*Id.* ¶ 40.)  Plaintiff had never witnessed any other DoF employee escorted out of the building by

security, (*id.* ¶ 41), and felt "humiliated and degraded" by such treatment, (*id.* ¶ 40).

On October 2, 2015, Plaintiff filed a complaint with New York State Division of Human

Rights ("NYSDHR"), alleging discriminatory employment practice by DoF based on race and

age in violation of the New York State Human Rights Law, ("NYSDHR Complaint").  (Doc. 18

at 11–19.)[3]  According to the document titled Notarization of the Complaint attached to the

NYSDHR Complaint, Plaintiff was also "filing [his] employment complaint with the U.S. Equal

Employment Opportunity Commission" ("EEOC"), alleging "claims under . . . Title VII of the

Civil Rights Act of 1964" ("Title VII"), "and/or Age Discrimination in Employment Act."[4]  (*Id.*

at 19.)  Plaintiff further authorized NYDHR to "accept this complaint on behalf of EEOC.  (*Id.*)

### B. *The Harman Firm's Representation of Plaintiff*

The Harman Firm is a citizen of New York, as are all of its partners.  (Rivera Decl. ¶ 17.)

It represented Plaintiff before the New York City Commission on Human Rights ("CCHR") in

connection with the charge he filed against the City for discrimination by DoF.  (*Id.* ¶ 3.)  On

March 23, 2016, The Harman Firm filed a verified complaint with CCHR on Plaintiff's behalf,

alleging race, national origin, and gender discrimination claims against the DoF.  (*Id.* ¶ 5; *see*

---

[3] The NYSDHR Complaint was submitted in this case with the Declaration of Donald C. Sullivan in support of the City's motion to dismiss the SAC.  (Doc. 18 ("Sullivan Decl.") Ex. B.)  However, it was mistakenly titled as "Plaintiff's EEOC Charge."  (*Id.* at 10.)

[4] The Notarization of the Complaint is part of the New York State Division of Human Rights Complaint Form.  *See* https://dhr.ny.gov/sites/default/files/pdf/complaint-form-fill-in.pdf at 9.

*also* CCHR Compl. 6–8.)  On or about June 26, 2019, CCHR closed the case for administrative

cause pursuant to Section 8-113(a)(5)[5] of the Administrative Code of the City of New York and

Rule 1-22(a)(5) of the Rules of Practice of the City Commission on Human Rights, which is a

mirror of § 8-113(a)(5), allowing Plaintiff to file a case in court.  (*Id.* ¶ 8; *see also* Doc. 13 Ex. C,

at 3.)  However, the CCHR's letter informing The Harman Firm of the decision to close the case

was not sent until at least July 15, 2019, and was not received by The Harman Firm until August

19, 2019.  (*Id.* ¶ 9.)

        Based on "a number of factors unrelated to the merits of [Plaintiff's] claims," The

Harman Firm chose not to file a complaint on Plaintiff's behalf in court.  (*Id.* ¶ 11.)  On or about

August 20, 2019, The Harman Firm sent Plaintiff a disengagement letter, attaching CCHR's

letter, and advised Plaintiff of his right to seek a new attorney.  (*Id.* ¶¶ 11–12; *see also id.* Ex. D.)

Plaintiff then brought this suit against the City in this Court on August 27, 2019.  Plaintiff also

brought a claim against The Harman Firm for "ill-advised legal procedure [and] negligent legal

omission of procedure."  (SAC 5.).  Thereafter, EEOC adopted NYSDHR's findings in

Plaintiff's case and dismissed Plaintiff's claim on or about November 8, 2019; EEOC also issued

the Right to Sue on that date.  (Sullivan Decl. Ex. C.) [6]  Specifically, Plaintiff claims that "[the]

Harman Firm['s] retainer agreement is flaws [sic] because it fail[ed] to advice [sic] Plaintiff on

---

[5] Section 8-113(a)(5) provides that "[t]he commission may, in its discretion, dismiss a complaint for administrative
convenience at any time prior to the taking of testimony at a hearing," and specifies that "administrative
convenience" shall include the circumstances where "[p]rosecution of the complaint will not serve the public
interest."  N.Y.C. Admin. Code § 8-113(a)(5).

[6] The City notes that Plaintiff appears to have filed his claim in this Court before he received the Right to Sue letter
from EEOC; however, the City does not move to dismiss on that basis.  (*See* Doc. 17, at 3 n.4.)  Plaintiff received
the Right to Sue letter on November 8, 2019, (Sullivan Decl. Ex. C); under 42 U.S.C. § 2000e-5(f)(1), the deadline
for him to file an action in court was February 6, 2020.  Plaintiff filed this action on August 27, 2019, which,
although before he received the Right to Sue letter, was still before February 6, 2020.  Therefore, I accept Plaintiff's
claims as timely filed.  *See also Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 418 n.3 (S.D.N.Y. 2006) (noting that
the 90-day period is not jurisdictional, but can be waived, like a statute of limitations) (citing *Zipes v. Trans World
Airlines*, 455 U.S. 385, 393 (1982)).

litigation procedural steps," and that The Harman Firm "filed [his] complaint through [the CCHR] which resulted [in] administrative closure[,] instead of filing through [the EEOC]."  (*Id.*)  Plaintiff also opposes the arbitration of this claim.  (*Id.*)

## II.   **Procedural History**

Plaintiff filed the Complaint on August 27, 2019.  (Doc. 2.)  The Complaint asserts discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 to 297, the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 131, and 42 U.S.C. § 1981 against DoF, and a negligence claim against The Harman Firm.  The Harman Firm was served on September 20, 2019, (Doc. 10), and the City was served on October 24, 2019, (Doc. 11).  On November 19, 2019, The Harman Firm filed its motion to compel arbitration or, in the alternative, dismiss the complaint.  (Doc. 12.)  On December 24, 2019, the City filed its motion to dismiss.  (Doc. 16.)  On January 3, 2020, Plaintiff filed the amended complaint.  (Doc. 21.)  On February 7, 2020, Plaintiff filed the Second Amended Complaint, alleging claims under Title VII and § 1981 against the City, and the same negligence claim against The Harman Firm.[7]  (Doc. 26.)  Both The Harman Firm and the City requested that I utilize their previously filed motion papers to the Second Amended Complaint, (Docs. 27 & 29), and I granted their requests, (*see* Docs. 28 & 30.)

---

[7] Plaintiff does not assert NYCHRL and NYSHRL claims in the Second Amended Complaint as he did in his first amended complaint.  (*See* Doc. 25.)  However, in their briefing on the pending motions, both Defendants treat the NYCHRL and NYSHRL claims as still pending as they both have applied their previous motions to dismiss to the Second Amended Complaint without any changes.  In this Opinion & Order, I do not address the NYCHRL and the NYSHRL claims, because (1) Plaintiff has not indicated in any way that he still intends to pursue these claims, (2) the original complaint and the first amended complaint are not referred to or integrated in the Second Amended Complaint, *c.f.*, *Cohen*, 897 F.3d at 80, and (3) in any case, these claims would likely have been barred by the election of remedies clause under the statute.  *See* N.Y.C. Admin. Code § 8-502(a).

### III.    <u>Legal Standards</u>

#### A.  *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility

that a defendant has acted unlawfully."  *Id*.

In considering a motion to dismiss, a court must accept as true all well-pleaded facts

alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.

*Kassner*, 496 F.3d at 237 (2d Cir. 2007).  A complaint need not make "detailed factual

allegations," but it must contain more than mere "labels and conclusions" or "a formulaic

recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (citation omitted).  In a

discrimination case, "[t]he facts required by *Iqbal* to be alleged in the complaint . . . need only

give plausible support to a minimal inference of discriminatory motivation."  *Littlejohn v. City of

New York*, 795 F.3d 297, 311 (2d Cir. 2015).  Finally, although all allegations contained in the

complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556

U.S. at 678.  A complaint is "deemed to include any written instrument attached to it as an

exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time

Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed,"

*Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89,

94 (2007)), and pro se pleadings should be read "to raise the strongest arguments that they

suggest," *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Jorgensen v. Epic/Sony

Records*, 351 F.3d 46, 50 (2d Cir. 2003)).  *See also Hughes v. Rowe*, 449 U.S. 5, 9

(1980) (stating that the submissions of *pro se* litigants are "held to less stringent standards than

formal pleadings drafted by lawyers" (internal quotation marks omitted)); *Ruotolo v. I.R.S.*, 28

F.3d 6, 8 (2d Cir. 1994) (recognizing that pro se litigants should be accorded "special

solicitude").  However, pro se status "does not exempt a party from compliance with relevant

rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471,

477 (2d Cir. 2006) (citation omitted).

### B.  *Rule 12(b)(1)*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v.

United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see* Fed. R. Civ. P. 12(b)(1).  While a district

court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in

the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting

jurisdiction[,] . . . . [W]here jurisdictional facts are placed in dispute, the court has the power and

obligation to decide issues of fact by reference to evidence outside the pleadings, such as

affidavits," in which case "the party asserting subject matter jurisdiction has the burden of

proving by a preponderance of the evidence that it exists." *Tandon*, 752 F.3d at 243 (internal

quotation marks and citations omitted).  Finally, "[a] court must liberally construe a *pro se*

litigant's papers when considering a motion to dismiss under Rule 12(b)(1)." *Jones v. Nat'l

Commun. & Surveillance Networks*, 409 F. Supp. 2d 456, 465–66 (S.D.N.Y. 2006) (citing *Soto v.

Walker*, 44 F.3d 169, 173 (2d Cir. 1995)).

IV.     **Discussion**

        A. *Racial Discrimination Claims*

           1.  **Applicable Law**

"[A] plaintiff is not required to plead a prima facie case under *McDonnell Douglas* . . . to defeat a motion to dismiss[, but] 'need only give plausible support to a minimal inference of discriminatory motivation,'" i.e. alleging facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84, 86–87 (2d Cir. 2015) (citing *Littlejohn*, 795 F.3d at 311). Specifically, a plaintiff "must plausibly allege that (1) the employer took adverse action against [them], and (2) [their] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Id.* at 87.  Because of the inherently elusive nature of intentional discrimination, a plaintiff must typically "rely on bits and pieces of information to support an inference of discrimination, *i.e.*, a mosaic of intentional discrimination." *Id*. at 86 (internal quotation marks omitted).  "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

If the claim survives the motion to dismiss, then, under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), the employer shall bear the burden at the summary judgment stage "to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir.

2019) (quoting *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016)).  If the employer

carries that burden, the plaintiff must then present "admissible evidence from which a finder of

fact could infer that the defendant's employment decision was more likely than not based in

whole or in part on discrimination."  *Id.* (internal quotation marks omitted).

### 2.  Application

The City contends that Plaintiff offered "nothing more than conclusory statements"

regarding the alleged discrimination, that "he fails to give any specific examples or provide even

a discussion as to the bases for the alleged different treatment," and that he "provides no further

detail about the alleged environment."  (City's Mem. 4–5.)[8]  This is an overstatement, and

ignores relevant allegations plausibly alleging discrimination.  I find that Plaintiff has met the

"minimal burden" of plausibly alleging facts that provide "at least minimal support for the

proposition that the employer was motivated by discriminatory intent," *Vega*, 801 F.3d at 87

(internal quotation marks omitted).[9]

"In and around November 2014, [Plaintiff] earned praise in his first evaluation for good

performance from his direct supervisor, Estella Dong."  (CCHR Compl. ¶ 10.)  However, things

changed after Plaintiff's Asian American co-worker Cathy told Dong to "check on [Plaintiff],"

(*id.* ¶ 14-15), and after Plaintiff complained about the incident to the DoF director Chan, (*id.* ¶

18).  "After this meeting [with Chan], [Plaintiff] was severely harassed by Ms. Dong."  (*Id.* ¶

20.)  Plaintiff alleges that during his second performance evaluation, Dong told him that he was

"inferior" and that "African-Americans are lazy."  (*Id.* ¶ 35.)  Although "[c]ourts in the Second

Circuit routinely dismiss discrimination claims where the only allegations made in support are

---

[8] "City's Mem." refers to the City's memorandum of law in support of its motion to dismiss the SAC.  (Doc. 17.)

[9] These facts may not withstand the test of time and the discovery process, but that is a question for later in this litigation.

11

stray remarks by non-decisionmakers wholly unconnected to the adverse employment action underlying the claim," *Ahmad v. White Plains City Sch. Dist.*, No. 18-CV-3416, 2019 WL 3202747, at *5 (S.D.N.Y. July 16, 2019), the remarks here were different in nature.  "In determining whether a remark is probative [of discriminatory intent], [courts] have considered four factors:  (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)."  *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149–50 (2d Cir. 2010) (cautioning that none of these factors are dispositive).  These remarks were made by Dong, Plaintiff's direct supervisor, who evaluated Plaintiff and put him on a performance improvement plan.  (*See* CCHR Compl. ¶¶ 10, 36-38.)  Dong made the remarks during Plaintiff's performance evaluation, telling him that "African Americans are lazy," and that as a result, Plaintiff "would not progress at DoF."  (*Id*. ¶ 35.)  After Dong made these comments, Plaintiff received a less favorable evaluation in March 2015, was put on a performance evaluation plan on April 9, 2015, received a poor evaluation in July 2015, and had his employment terminated on July 24, 2015. (*Id*. ¶¶ 36–39.)  Therefore, these remarks were not "stray remarks," but instead were "the employer's criticism of [Plaintiff's] performance in ethnically degrading terms," *Littlejohn*, 795 F.3d at 312, followed by adverse employment actions, which gives rise to an inference of discrimination.

Moreover, although a singular discriminatory comment alone may not always be sufficient to establish an inference of discrimination, *see Jowers v. Family Dollar Stores, Inc.*, No. 09 Civ. 2620(WHP), 2010 WL 3528978, at *3 (S.D.N.Y. Aug. 16, 2010) (dismissing Title

VII claim where Plaintiff's sole complaint of discrimination was one single racially derogatory remark), here Plaintiff has pleaded a "sequence of events leading to [his] discharge," *Littlejohn*, 795 F.3d at 312.  To begin with, at the time Plaintiff was employed by DoF, the department primarily consisted of Asian Americans, and he was the only African American male in his department.  (CCHR Compl. ⁋ 27.)  His supervisor Dong made Plaintiff an outcast from the department by asking others not to speak with Plaintiff and telling others that she "did not like speaking to him."  (*Id*. ¶¶ 21, 26.)  Dong also arbitrarily criticized Plaintiff's work and refused to meet him when he came for help, but gave "female Asian American employees . . . assistance and leniency with mistakes."  (*Id*. ¶ 29.)  Moreover, Plaintiff never witnessed security guards at DoF escort any other employee out of the building as they did to him.  (*Id*. ¶¶ 40 & 41.)  Bearing in mind the "elusive nature of intentional discrimination," *Vega*, 801 F.3d at 86 (internal quotation marks omitted), I find that Plaintiffs has plausibly pleaded that racial discrimination is at least a motivating factor in his employment termination.  Therefore, I decline to dismiss Plaintiff's racial discrimination claims under Title VII.

### B.  *Sex Discrimination Claim*

"Before an aggrieved party can assert a Title VII claim in federal court, [they are] generally required to exhaust the administrative remedies provided by the statute" by first filing a charge with the EEOC.  *Duplan v. City of N.Y.*, 888 F.3d 612, 621 (2d Cir. 2018); *see also* 42 U.S.C. § 2000e-5(e)(1).  Here, it remains unclear whether Plaintiff has exhausted the administrative remedies regarding his sex discrimination claim because the purported "Plaintiff's EEOC Charge" filed by the City is, in fact, Plaintiff's NYSDHR Complaint.  *See supra* nn.3, 4. It seems that Plaintiff was also filing his NYSDHR Complaint with the EEOC, and the NYSDHR Complaint itself did not contain sex discrimination allegations.  (*See* Sullivan Decl.

Ex. B.)  However, neither the City nor Plaintiff has explained whether this constitutes the only complaint Plaintiff ever filed with the EEOC.

Nevertheless, "failure to exhaust administrative remedies [does not] deprive[] a district court of jurisdiction to hear the Title VII claim," *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 468 (S.D.N.Y. 2011) (citing *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)), hence I will proceed to consider the merits of Plaintiff's claim.  After reviewing the allegations, I find that Plaintiff has failed to allege a sex discrimination claim.  The only allegations that could be related to a sex discrimination claim are (1) Dong "treated the female Asian-American employees favorably," (CCHR Compl. ¶ 29), and (2) DoF's decision to send security guards to escort Plaintiff out of the building "was driven by fear and stereotypes of [Plaintiff] as a tall black man," (*id*. ¶ 41).  The former is too vague to plausibly support even a minimal inference of discrimination, *c.f. Vega*, 801 F.3d at 84.  The latter is a conclusory statement that is not substantiated with any facts, which I need not take as true.  *Iqbal*, 556 U.S. at 678.  Therefore, Plaintiff's sex discrimination claim must be dismissed.

## C.  *Section 1981 Claim*

Section 1981 provides, in pertinent part, that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981.  This section "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004).  To state a claim under § 1981, a plaintiff must allege facts showing that (1) the plaintiff is a "member[] of a racial minority;" (2) the defendant intentionally discriminated "on the basis of race;" and (3) the "discrimination concern[ed] one of the statute's enumerated activities." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000).

The Second Circuit has made clear that § 1981 does not provide a private right of action against state actors.  *Duplan*, 888 F.3d at 621.  Instead, a plaintiff needs to bring such a claim under § 1983, which allows an action at law against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983; *see also Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 733 (1989) (noting that § 1983 "constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units").  Therefore, it is clear that Plaintiff's claim against the City under § 1981 cannot be sustained because this section provides no cause of action for him.

To the extent that I "construe [Plaintiff's] § 1981 claim[] as brought under § 1983, [it] still fail[s] because [Plaintiff] has failed to allege that the 'challenged acts were performed pursuant to a municipal policy or custom,' as required to maintain a § 1983 action against a municipality."  *Duplan*, 888 F.3d at 621 (construing pro se plaintiff's § 1981 claims as brought under § 1983).  Plaintiff did not point to any written DoF policy that relates to his cause of action.  Although he did allege that he was treated less favorably than some other employees, (CCHR Compl. ¶ 7 and 29), and received racially-charged remarks by his supervisor, (*id*. ¶ 35), he does not allege any specific incidents involving other employees other than what appears to be the personal animosity between him and Dong, and perhaps, Cathy and Chan.  Such allegations are too vague to support a finding that DoF had a department-wide custom which resulted in Plaintiff's termination.  *See also Richards v. City of New York*, No. 20-CV-3348 (RA)(KNF), 2021 WL 3668088, at *2 (S.D.N.Y. Aug. 18, 2021) ("Municipalities like the City

cannot be held liable under § 1983 merely because they employ someone who violated the

plaintiff's constitutional rights."). Therefore, Plaintiff's § 1981 claim must be dismissed.

### D. *Legal Malpractice Claim*

With regard to Plaintiff's claim against The Harman Firm, I must first determine whether

there is a basis to exercise jurisdiction. The subject matter jurisdiction of federal district courts

as set forth in 28 U.S.C. §§ 1331 and 1332 allows a district court to exercise its power only when

a "federal question" is presented or when plaintiff and defendant are citizens of different states

and the amount in controversy exceeds $75,000.

Plaintiff filed the claim against his former attorneys at The Harman Firm for "ill-advised

legal procedure [and] negligent legal omission of procedure." (SAC at 5.) Even if I liberally

construe this claim as a dispute between a party and his attorney regarding legal services

provided, *see Case v. Clivilles,* 216 F. Supp. 3d 367, 372, 379 (S.D.N.Y. 2016) (construing pro

se plaintiff's "professional[] negligen[ce]" and "violat[tion of] professional duty" claim against

her lawyer as a legal malpractice claim), it is still clearly a state law claim. There is no federal

question jurisdiction, as Plaintiff's claim does not arise "under the Constitution, laws, or treaties

of the United States." 28 U.S.C. § 1331.

Plaintiff also fails to demonstrate that diversity jurisdiction exists. The Second Amended

Complaint suggests that Plaintiff is a citizen of New York, as he lists his current address in

Bronx, New York, and his former place of employment in Brooklyn, New York. (SAC at 7.)

"To establish jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that the plaintiff

and the defendant are citizens of different states." *Pimental v. Ricotta & Marks, P.C.,* 1:19-CV-

7437 (CM), 2019 WL 4412470, at *3 (S.D.N.Y. Sep. 13, 2019). Plaintiff does not allege that

The Harman Firm is a citizen of a different state. Indeed, The Harman Firm submitted a

declaration stating that each of its partners are citizens of New York.  (Rivera Decl. ¶ 17.)  *See also Tandon*, 752 F.3d at 243 ("[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.").  Therefore, even viewing the pleadings in the light most favorable to Plaintiff, I cannot find that there is diversity jurisdiction.

Additionally, there is no supplemental jurisdiction.  Supplemental jurisdiction exists over "all other claims" in a civil action "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  "[I]ssues of state law are part of the 'same case or controversy' where they share a 'common nucleus of operative fact' with the plaintiff's [federal question] claim."  *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 468 (S.D.N.Y. 2008) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).  Although I have jurisdiction over Plaintiff's civil rights claims, those claims arise out of Plaintiff's employment at DoF; Plaintiff's dispute with The Harman Firm, on the other hand, arises out of The Harman Firm's representation of him in front of CCHR.  The two claims focus on different time periods and do not share a "common nucleus of operative fact."  *Torres*, 628 F. Supp. 2d at 468. Therefore, there is no supplemental jurisdiction over Plaintiff's claim against The Harman Firm.[10]

---

[10] Even if there is supplemental jurisdiction, I would decline to exercise jurisdiction over the malpractice claim because this claim would "significantly broaden[] the scope of this litigation" and "require inquiry into a host of additional facts."  *Lawrence v. NYC Med. Prac., P.C.*, No. 1:18-CV-8649-GHW, 2019 WL 4194576, at *7 (S.D.N.Y. Sept. 3, 2019) (finding that defendants' state law counterclaims should be dismissed under 28 U.S.C. § 1367(c) "regardless of whether [they] satisfied the 'same case or controversy' requirement of § 1367(a)").  Further, declining to exercise supplemental jurisdiction would "avoid needless decisions of state law by this Court, which also promotes the interests of comity and justice."  *Id.* at 8 (quoting, ultimately, *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

Because there are no grounds upon which I can exercise subject matter jurisdiction over Plaintiff's claim against The Harman Firm, this claim must be dismissed.  *See Chakraborty v. Soto*, 2017 WL 5157616, at *6 (S.D.N.Y. Nov. 6, 2017) ("[J]urisdictional requirements are not relaxed based on a litigant's *pro se* status . . . despite the lenient standard with which courts review *pro se* complaints.")  As a result, I need not address The Harman Firm's motion to dismiss for failure to state a claim or motion to compel arbitration.

### V.    Conclusion

For reasons stated above, Defendant City of New York's motion to dismiss as to Plaintiff's racial discrimination claim under Title VII is hereby DENIED, and its motion to dismiss as to Plaintiff's remaining claims is hereby GRANTED.  The Harman Firm's motion to dismiss as to Plaintiff's purported malpractice claims is hereby GRANTED.  The Harman Firm's motion to compel arbitration is DENIED as moot.

The City is hereby ORDERED to file its answer to the Second Amended Complaint with regard to the racial discrimination claim under Title VII on or before February 28, 2022.

The Clerk is respectfully directed to close the open motions on the docket and mail a copy of this order to the pro se Plaintiff.


SO ORDERED.

Dated: January 27, 2022
       New York, New York


Vernon S. Broderick
United States District Judge